**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MJG**, *et al.* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 17-318** |
| | : | |
| **SCHOOL DISTRICT OF** | : | |
| **PHILADELPHIA**, *et al.* | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                    **November 2, 2017**

A school district and outside behavioral services provider must be ever vigilant in ensuring their students' safety including from fellow students' improper sexual touching. The district's vigilance often expands for students facing intellectual or emotional challenges as detailed in an individualized education plan. But as society unfortunately learns ever more frequently, no district or service provider can stop all intended misconduct at all times and not all service providers are state actors. The law requires our educators take substantial steps to ensure student-on-student safety including defining and following a plan agreed to with the parent or guardian after notice of an earlier issue. When, as today, alleged student-on-student sexual touching occurred between intellectually challenged students despite a plan and after remedial efforts and we cannot find the outside service provider to be a state actor, we must dismiss the federal civil rights claims and state law claims other than a negligence claim against the outside provider. We also enforce a broadly worded contract obligation to pay the parent's attorney's fees at a reasonable hourly rate incurred in the administrative process before the parent sought civil rights and other remedies here. As we today resolve all issues over which we arguably enjoy subject matter jurisdiction, and mindful the student may still timely pursue her negligence claims in state court, we decline to exercise supplemental jurisdiction over the negligence claim.

## I.        Undisputed Facts[1]

MJG, a student challenged with severe intellectual disabilities and Autism Spectrum Disorder, attended Swenson Arts & Technology High School for the 2014-15 and 2015-16 school years.[2]  Swenson is a public high school within the Philadelphia School District.[3]  While at Swenson, the District provided MJG with special education services according to MJG's individualized education program.[4]  The individualized education plan required behavior health services in the form of mobile therapy, behavior specialist consultant services, and therapeutic staff support services.[5]  Therapeutic staff support services are one-on-one behavioral health interventions designed to promote age-appropriate behavior and social growth.[6]

Private entities provided MJG's behavior health services.[7]  Before June 19, 2015, Green Tree School & Services provided MJG with the behavior health services.[8]  After June 19, 2015, Carson Valley Children's Aid provided these behavior health services for MJG.[9]  Although Green Tree and Carson Valley provided services, they did not make the ultimate determination of the services MJG received.[10]  Community Behavioral Health, a managed care organization, determined the services medically necessary for MJG.[11]  Community Behavioral Health decided based upon recommendations submitted by a licensed psychologists on behalf of Green Tree or Carson Valley.[12]  When Carson Valley took over MJG's services in June 2015, it followed the plan submitted by Green Tree and approved by Community Behavioral Health in April 2015 for the period ending April 2016.[13]  MJG's plan provided for fifteen hours of therapeutic staff support services per week.[14]  No written contract existed between Carson Valley and the District to provide behavioral health services.[15]

On February 18, 2016, Princess J., MJG's mother ("Parent"), contacted Sharonda Oliver, MJG's therapeutic staff support worker, to report RD, another mentally disabled student at

Swenson, inappropriately touched MJG during the lunch period that afternoon.[16]  During lunch, MJG, RD and another student, AK, left the lunch area and walked into Swenson's outdoor patio area.[17]  The students' actions while outside are unconfirmed, but Parent claims RD inappropriately touched MJG.[18]  Swenson has an outdoor security camera pointed at the outside patio area, but the students did not remain in view of the camera.[19]

Ms. Oliver immediately called Lisa Lynch, MJG's teacher and later Special Education Liaison for Swenson, to notify her of Parent's complaint.[20]  Ms. Lynch then notified Swenson Principal Colette Langston, Swenson Dean of Students Dean Lent, and Swenson school police officer Sharon Francis of the allegations.[21]

The next day, Ms. Lynch took statements from RD and AK who said MJG had an issue with her belt resulting in her pants falling down and RD and AK helped MJG buckle her pants.[22]  A police incident report completed the same day provides RD pulled MJG's pants down and blew on her belly button.[23]  During an interview with police, Parent explained MJG claimed RD rubbed his penis below her stomach.[24]  Whether RD exposed himself to MJG is contradicted in different reports.[25]

The same day, MJG and her family, Ms. Oliver, Mr. Lent, Ms. Langston, Ms. Francis, and Carson Valley behavioral specialist consultant Kai Wleh met to discuss the alleged incident.[26]  The District created a safety plan for MJG.[27]  Parent did not send MJG back to Swenson for the remainder of the 2015-16 school year because she feared for MJG's safety.[28]

On April 5, 2016, Christina Wohleber, a licensed psychologist, evaluated MJG on behalf of Carson Valley.[29]  Ms. Wohleber recommended MJG's therapeutic staff support hours be increased from fifteen to thirty-two-and-a-half hours per week.[30]  Carson Valley submitted the request for increased time to Community Behavioral Health, but it denied the request as not

medically necessary.[31]

Parent's February 18, 2016 complaint marked the second time she claimed RD inappropriately touched MJG. On March 30, 2015, Parent reported RD inappropriately touched MJG to Ms. Lynch and Green Tree behavioral specialist consultant, Marissa Smale.[32] Ms. Lynch, Ms. Smale, and Parent met on April 14, 2015 to discuss the alleged incident.[33] After the meeting, Ms. Lynch separated MJG and RD in the classroom and requested classroom staff more closely monitor the students.[34]

On July 19, 2016, Parent filed a due process complaint against the District alleging it failed to provide MJG a free appropriate public education.[35] The parties reached a settlement signed by the District on October 13, 2016. As part of the Settlement Agreement, the District agreed, among other things, to provide 800 hours of compensatory education, refer MJG to a private school and pay MJG's tuition until she turns twenty-one years old, and pay MJG and Parent's reasonable attorney fees up to the signing of the Settlement Agreement.[36]

## II.    Analysis

MJG and Parent assert federal and state law claims against the District, Ms. Langston, Ms. Lynch, Mr. Roseman, and Carson Valley. MJG alleges the District violated Title IX[37] by failing to adequately respond to student-on-student harassment, and the Americans with Disabilities Act[38] by denying her educational benefits because of her disabilities. MJG claims Carson Valley and the District violated Section 1983[39] by creating a danger of sexual harassment against MJG. MJG also claims Carson Valley, the District, Ms. Langston, Ms. Lynch, and Mr. Roseman acted negligently and outrageously in their response to alleged harassment.

Following our dismissal of some but not all claims[40] and discovery, Defendants now move for summary judgment.[41] Carson Valley argues it is not a state actor subject to Section

1983, it did not owe a duty to MJG at the time of the February 18 incident, and its conduct does not shock the conscience. The District argues it did not act with deliberate indifference to support a Title IX claim, it did not intentionally discriminate against MJG because of her disability, did not take affirmative actions or act with deliberate indifference to support a 1983 claim, and is immune from liability against MJG's state law claims under the Political Subdivision Tort Claims Act[42].

MJG and Parent also move for summary judgment on their claim the District breached the Settlement Agreement by failing to pay reasonable attorney fees to MJG and Parent's attorney Joseph Montgomery, Esq. The District argues the rates and hours offered by MJG are unreasonable, the settlement agreement contains an ambiguity to be resolved by the factfinder, and MJG seeks attorney fees beyond those provided for in the Settlement Agreement.

### a. We grant summary judgment dismissing the Section 1983 claims against Carson Valley because it did not act under color of state law.

MJG and Parent claim Carson Valley violated Section 1983 by taking affirmative action to create a danger by exposing MJG to sexual harassment and by failing to train or supervise its staff. Carson Valley argues it cannot be held liable under Section 1983 because it is not a state actor. MJG argues Carson Valley is a state actor because Carson Valley and the District jointly participated in a flawed program and Carson Valley substituted its own judgment for the District.

Under Section 1983, Carson Valley cannot be liable for a civil rights claim unless it (1) deprived MJG of a constitutional right, and (2) committed the alleged misconduct depriving her of the right "under color of state law."[43] Carson Valley's alleged misconduct must involve "state action."[44] "To constitute state action, 'the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible' and 'the party charged with the deprivation must be a person who may fairly be said to be a state

actor.'"[45]  MJG has the burden of proving Carson Valley acted "under color of state law."[46]

In determining whether actions of private entities create state action, the "principal question" is whether there exists a "close nexus" between the state and the alleged misconduct allowing us to conclude the "private behavior may be fairly treated as that of the State itself."[47] "What is fairly attributable is a matter of normative judgment, and the criteria lack rigid simplicity."[48]  Our court of appeals recognizes "three broad tests" for determining whether state action exists: (1) whether the private entity exercised powers traditionally within the "exclusive" prerogative of the state; (2) whether the private entity acted with the help of or in concert with state officials; and (3) whether the state sufficiently insinuated itself into a position of interdependence with the private party rendering it a joint participant in the alleged misconduct, also known as the symbiotic relationship test.[49]

Under the concerted action test, our court of appeals adopted a two part inquiry to determine whether a private party acted under color of state law:  "(1) the private entity has a 'prearranged plan' with the [state actors], and (2) under the plan, [the state actor] will 'substitute their [own] judgment' with that of the private entity's."[50]  "[T]he inquiry is fact-specific" and "no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient . . . ."[51]

MJG failed to adduce evidence Carson Valley substituted its own judgment in place of the District.  All parties adduced evidence Carson Valley and the District worked collaboratively in administering MJG's education, rather than Carson Valley substituting its own judgment for the District.  Carson Valley worked with the District to determine how to best allocate MJG's therapeutic staff support hours.[52]  Carson Valley also collaborated with the District in interagency meetings to discuss and develop MJG's future educational and treatment plans.[53]  In

response to the allegations RD inappropriately touched MJG, Carson Valley, the District, and MJG's family worked with one another to develop an appropriate response and plan going forward.[54]

MJG argues Carson Valley substituted its judgment for the District in its request to Community Behavioral Health proposing services MJG receive for the upcoming months. But MJG failed to adduce evidence Carson Valley exercised judgment, let alone substituting its own judgment for the District. The request for approval of services is created by a licensed psychologist on behalf of Carson Valley.[55] The services requested for approval are based upon the psychologist's review of relevant documents, and interviews with MJG, MJG's family, and Carson Valley staff.[56] MJG and Parent failed to adduce evidence Carson Valley could overrule the psychologist's analysis and recommendations. Community Behavioral Health's response and decision is directed to Parent.[57] The decision letter offers Parent an opportunity to learn more about how Community Behavioral Health reached its decision and outlines the procedure for filing a complaint, requesting a fair hearing, and getting a second opinion.[58] Parent states she relied on Green Tree and Carson Valley to submit grievances to Community Behavioral Health, but Parent does not adduce evidence Carson Valley unilaterally made the decision whether a grievance, fair hearing, or second opinion was appropriate. The evidence shows Parent decided whether to seek review with Community Behavioral Health.[59] A reasonable juror could not find Carson Valley substituted its own judgment for the District. Carson Valley did not act "under color of state law."

> **b. Issues of fact preclude summary judgment on the negligence claim against Carson Valley.**

MJG argues Carson Valley acted negligently by failing to provide a therapeutic support services worker with MJG while MJG and RD ate lunch on February 18, 2016 despite knowing

7

RD inappropriately touched MJG in the past. Carson Valley argues it did not provide services for MJG on February 18, 2016 and did not owe a duty to MJG, and it could not foresee the February 18 incident because it did not know of prior inappropriate sexual contact between RD and MJG.

The elements of negligence include: "(1) a duty or obligation recognized by the law requiring the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) defendant's failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; (4) actual loss or damage resulting to the plaintiff."[60] "The existence of a duty is a question of law for the court to decide."[61] "Whether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk and the public interest in the proposed solution."[62]

The relationship between Carson Valley and MJG created a duty of care for Carson Valley to protect MJG from unreasonable risks.[63] Carson Valley provided therapeutic support services to MJG including: supportive one-to-one behavioral health interventions, assisting caregivers in in promoting age appropriate behavior, and training MJG in communication and coping skills.[64] Carson Valley provided these services in a variety of settings, including, MJG's home, school, and community.[65] Given the close relationship between Carson Valley and MJG and the services Carson Valley provided to MJG, it is fair to find Carson Valley owed a duty of care to MJG during the hours Carson Valley provided her services.

Genuine issues of material fact whether Carson Valley provided services to MJG on February 18, 2016 and whether Carson Valley knew of MJG's past history of inappropriate sexual contact with others preclude summary judgment.

Carson Valley cites its Encounter Form records which Ms. Oliver completed after each session with a student.[66] The Encounter Form confirms Ms. Oliver provided therapeutic staff support services for a different student from 9:00am until 3:00pm on February 18, 2016.[67] The Encounter Form is dated and signed by Ms. Oliver on February 18, 2016.[68] But according to a report created by Mr. Wleh on February 18, 2016, he spoke to the therapeutic staff support provider working that day and she explained she worked with MJG during the day and ended her shift immediately following lunch.[69] The therapeutic staff support provider had no idea of the incidents alleged to have taken place during lunch.[70] Although Mr. Wleh's report does not identify Ms. Oliver by name, it is undisputed Ms. Oliver provided therapeutic staff support services for MJG from November 10, 2015 through February 19, 2016.[71] While providing services to a student, Ms. Oliver was "supposed to be with their student at all times."[72] Based on this evidence, a reasonable juror could find Carson Valley owed MJG a duty of care during the time of the alleged incident on February 18, 2016. A reasonable juror could also find Carson Valley breached their duty by not staying with MJG during lunch while providing services for her on February 18, 2016.

There is also a genuine dispute of material fact whether Carson Valley knew of prior inappropriate sexual contact between MJG and others. Carson Valley adduces evidence the District did not provide this information to Carson Valley before it began providing services for MJG.[73] Carson Valley also argues it could not have known about the prior contacts between RD and MJG because Green Tree, not Carson Valley, provided behavioral health services for MJG on the March 30, 2015 incident.

But Parent signed a release allowing Green Tree to provide Carson Valley all of MJG's records regarding her medical history, mental status, psychiatric evaluations, psychological

evaluations, and behavioral health treatment plans.[74]   Although the release does not identify specific documents released to Carson Valley, MJG argues Green Tree released a biopsychosocial evaluation identifying MJG's issues with sexual contact.  Carson Valley does not deny it received this record.[75]   In this record, created about two months before Carson Valley took over for Green Tree, a licensed psychologist identified MJG's issues with sexual contact including increased interest in her body, touching herself in public, and seeking sexual contact from her peers and family members.[76]   Presented with this evidence, a reasonable juror could find Carson Valley knew MJG sought sexual contact from her peers.  If Carson Valley knew of MJG's issues with seeking sexual contact from her peers, a reasonable juror could find it foreseeable MJG could seek or be vulnerable to sexual contact from another student.

Issues of fact preclude summary judgment on MJG's and Parent's negligence claim.[77]

     **c.  We grant summary judgment and dismiss the intentional infliction of emotional distress claim against Carson Valley because MJG failed to adduce evidence of extreme and outrageous behavior.**

To prove intentional infliction of emotional distress, MJG and Parent must show at least "intentional outrageous and extreme conduct by the defendant, which causes severe emotional distress to the plaintiff."[78]   In addition, MJG and Parent must show "some type of physical harm due to the defendant's outrageous conduct."[79]   "Liability on an intentional infliction of emotional distress claim 'has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"[80]   MJG and Parent failed to adduce evidence Carson Valley's acted outrageously to support a claim of intentional infliction of emotional distress.

MJG and Parent argue Carson Valley failed to provide fifteen therapeutic staff support

hours per week. Even if true, MJG and Parent fail to take the next requisite step of identifying how Carson Valley's failure to provide the fifteen hours goes beyond all possible bounds of decency to be regarded as atrocious and utterly intolerable. MJG and Parent argue Ms. Oliver fraudulently falsified her timesheets to make it appear MJG received more services than actually provided. MJG and Parent assert this argument "upon information and belief" which is insufficient at the summary judgment stage.[81] MJG and Parent also claim Carson Valley falsified documents to conceal whether Ms. Oliver provided services for MJG on February 18, 2016. MJG and Parent point to the discrepancy between the Encounter Form and Mr. Wleh's report discussed above. But MJG and Parent fail to adduce evidence of concealment or fraudulent intent by Carson Valley. The discrepancy between the two documents alone is insufficient to support an argument at the summary judgment stage Carson Valley acted fraudulently.

MJG and Parent argue Carson Valley actively and intentionally concealed incidents of sexual contact and harassment from Parent. MJG and Parent fail to adduce evidence of active or intentional concealment. Parent cites to her own deposition testimony where she states no one from Swenson informed her of the December 2015 incident.[82] MJG simply claims she observed other students touching each other on December 2015, and MJG was not subject to harassment in the alleged incident.[83] Parent also cites to an April 2015 biopsychosocial evaluation which identifies MJG's increased interest in sexual contact.[84] Green Tree, not Carson Valley, prepared this evaluation, and it lists Parent as a source of information. Green Tree also did not conceal this evaluation; Green Tree submitted this evaluation to Community Behavioral Health as part of its request for approval of services. These citations alone are insufficient for a reasonable juror to conclude Carson Valley *actively* and *intentionally* concealed sexual abuse occurring at

Swenson. MJG and Parent fail to adduce sufficient evidence for a reasonable juror to find Carson Valley acted with the required degree of outrageousness to support an intentional infliction of emotional distress claim.

> **d.  We grant summary judgment dismissing the Title IX claim against the District because MJG failed to adduce evidence the District acted with deliberate indifference.**

MJG claims the District violated Title IX by creating a school environment conductive to sexual harassment and knowingly permitting student-on-student sexual harassment. The District argues MJG failed to adduce evidence the District acted with deliberate indifference to alleged sexual harassment at Swenson.[85]

Title IX provides "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[86]  In *Davis v. Monroe Cnty. Bd. of Educ.*,[87] the United States Supreme Court found "recipients of federal funding may be liable for 'subject[ing]' their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority."[88]  This "does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action."[89]  "On the contrary, the recipient must merely respond to known peer harassment in a manner that is not clearly unreasonable."[90]  "School administrators receive substantial deference in cases of alleged student-on-student harassment; victims of harassment have, for example, no 'right to make particular remedial demands.'"[91]

To prevail on the Title IX claim, MJG must show "(1) the [the District] received federal funds; (2) sexual harassment occurred; (3) the harassment occurred under 'circumstances

wherein the [the District] exercised substantial control over both the harasser and the context in which the . . . harassment occurred; (4) [the District] had 'actual knowledge' of the harassment; (5) [the District] was 'deliberately indifferent' to the harassment; and (6) the harassment was 'so severe, pervasive and objectively offensive that it [could] be said to [have] deprive[d] the victims of access to the educational opportunities or benefits provided by the school."[92]  "The relevant inquiry for purposes of evaluating whether [the District] was deliberately indifference to known circumstances of harassment is to review its response to reported incidents of harassment."[93] The District is not deliberately indifferent "merely because it did not undertake the specific remedial action that [Parent] desired."[94]

In *Ings-Ray v. Sch. Dist. Of Phila.*,[95] a mentally disabled student claimed another mentally disabled student sexually harassed her.[96]  The plaintiff cited two incidents of harassment.[97]  First, the assailant touched the plaintiff's bottom while both students walked to the school bus.[98]  Second, nearly a year later, the assailant again touched the plaintiff's bottom while walking in the school hallway.[99]  In response to the first incident, the school investigated the incident, spoke to the plaintiff's parents, suspended the assailant, took the assailant out of the class shared with the plaintiff but kept the students in the same homeroom, arranged the assailant be supervised by a teacher aide while in class and in the hallways, adjusted its sexual education curriculum, and arranged outside organizations to present a program on inappropriate touching at school.[100]  The court described the school's actions as a "model response."[101]  The following school year, the students shared a classroom once more, and the assailant once again inappropriately touched the plaintiff.[102]  The school investigated the incident, spoke to the student's parents, met to develop a behavioral plan, developed a schedule requiring supervision of the students at all times, including lunch and the hallways, and transferred the assailant out of

all shared classes with the plaintiff.[103]

The court in *Ings-Ray* found the school district did not act in a "clearly unreasonable" fashion in its response to the two incidents.[104] The court rejected the plaintiff's argument the school district acted with deliberate indifference merely because the second incident occurred.[105] The court granted the school district's motion for summary judgment even though the school district's response to the incidents "was not foolproof."[106] The court explained "there is little more short of outright expulsion that school officials could have done to prevent further harassment."[107]

The District did not implement a "model response" as implemented in *Ings-Ray*, but it also did not act in a "clearly unreasonable" fashion. In response to MJG's allegation RD inappropriately touched her in March 2015, Ms. Lynch met with Parent, separated MJG and RD in the same classroom by rearranging the students' seats, and instructed the classroom staff to more closely monitor MJG.[108] Although the District's response did not prevent the second incident from occurring and the plan "was not foolproof," the District took several of the same steps adopted by the school district in *Ings-Ray*. Simply because the District allowed MJG and RD to stay in the same classroom or lunchroom together is insufficient to find it acted with deliberate indifference.[109]

In response to the second incident, Ms. Lynch contacted Ms. Langston, Mr. Lent, and Swenson's school police officer to inform them of the alleged events.[110] Ms. Langston, Parent, Parent's fiancée, Parent's daughter, Ms. Oliver, Mr. Wleh, Mr. Lent, and Swenson's school police officer met to discuss the alleged events.[111] As a result of the meeting, the District created a safety plan for MJG.[112] But MJG did not return to Swenson for the remainder of the school year.[113] The District did not act in a clearly unreasonable fashion in response to the second

alleged incident which occurred nearly eleven months after the first.

Given school administrators are entitled to substantial deference to their response to student-on-student sexual harassment, and considering the District took tangible steps to address each allegation of harassment, a reasonable juror could not find the District acted in a "clearly unreasonable" fashion.

### e. We grant summary judgment dismissing the Title II claim against the District because MJG failed to adduce evidence the District intentionally discriminated against MJG.

MJG and Parent claim the District violated the ADA because it failed to offer MJG the same accommodations a non-disabled student would enjoy when exposed to student-on-student sexual harassment. MJG claims the District improperly based its accommodation decision on MJG's disability because the District kept only two classrooms for mentally disabled students at Swenson and separated the students by age. MJG argues the District's policy on age separation required MJG to remain in the same room as RD, while a non-disabled student would have more room options to separate themselves from a harasser. MJG argues the District's decision to keep MJG in the same room as her assailant resulted in the denial of the benefits of her education because of her disability. The District argues MJG failed to adduce evidence it intentionally discriminated against MJG. The District also argues MJG's ADA claim is duplicative to its released IDEA claims and should be dismissed.[114]

Title II of the ADA provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[115] To establish a claim under the ADA, MJG must demonstrate: (1) she has a disability; (2) she is otherwise qualified to participate in school activities; and (3) the District denied her benefits of

the school program or otherwise discriminated against her because of her disability.[116]

Because MJG seeks compensatory damages, MJG must show the District intentionally discriminated against her.[117]  MJG may establish intentional discrimination by showing the District acted with "deliberate indifference."[118]  The two-part standard applied for establishing deliberate indifference requires: "(1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood."[119]  MJG must show actual knowledge, evidence showing the District "should have known" of the harm is not sufficient.[120]  MJG need not show the District acted with "personal ill will or animosity" towards her.[121]  But, a showing of negligence, bureaucratic inaction, or poor decision-making is insufficient.[122]  "In this context, our role is not to determine whether [the District] could have done a 'better' job of accommodating [MJG]."[123]

MJG and Parent fail to adduce evidence the District acted with deliberate indifference in responding to alleged sexual harassment against MJG by keeping MJG and RD in the same classroom.  The District did not fail to act.  As discussed above, Ms. Lynch separated MJG and RD in the same classroom by rearranging their seats.[124]  Ms. Lynch also instructed classroom aides to more closely monitor MJG and RD.[125]  Although separating MJG and RD into separate classrooms may have been a better accommodation for MJG, the suggestion of a better accommodation is not equal to or sufficient to show deliberate indifference.[126]  Parent is not entitled to her preferred accommodation.

MJG does not cite, and we do not find, authority requiring the District to separate MJG and RD in different classrooms under Title II.  MJG also does not adduce evidence non-disabled students at Swenson enjoyed the accommodation of transferring to a separate classroom from an assailant.  The District's decision to keep MJG and RD in the same classroom may have been

negligent, but MJG and Parent failed to adduce evidence the District's accommodation of separation and close monitoring amounts to deliberate indifference.

      **f.  We grant summary judgment dismissing the state created danger and municipal liability claim against the District because MJG failed to establish a constitutional violation.**

MJG and Parent argue the District is liable under Section 1983 because Ms. Langston, Ms. Lynch and Ms. Roseman took affirmative actions to place MJG in danger and had a policy, custom and practice of placing students in danger.  The District argues MJG cannot identify a violation of a constitutional right, cannot adduce evidence the District acted with the degree of culpability which shocks the conscience, cannot identify any affirmative action it took to place MJG in danger, and cannot identify the District custom or practice to impose liability.

"[P]ublic schools, as a general matter, do not have a *constitutional* duty to protect students from private actors."[127]  But our court of appeals has recognized a state created danger exception, allowing a Section 1983 claim where the state "acts to *create* or *enhance* a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process."[128]  To prove a state created danger, MJG must show: "(1) the harm ultimately caused [by the state actor's conduct] was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim . . . or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions . . . ; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all."[129]

"[T]he degree of wrongfulness necessary to reach the 'conscience shocking' level depends upon the circumstances of a particular case."[130]  "If circumstances are highly

pressurized, it is necessary to show intentional harm by the state actor; however, if the state actor has the benefit of deliberation, then all the plaintiff needs to show is deliberate indifference."[131] Our court of appeals has defined deliberate indifference "as requiring a 'conscious disregard of a substantial risk of serious harm.'"[132] "[D]eliberate indifference might exist without actual knowledge of a risk of harm when the risk is so obvious that it should be known."[133] MJG failed to adduce evidence the District acted with deliberate indifference.[134] Ms. Langston and Ms. Lynch did not "consciously disregard a substantial risk of serious harm."

As discussed above, following the first incident in March 2015, Ms. Lynch met with MJG's family and MJG's Green Tree therapeutic staff support worker to discuss the allegations.[135] Ms. Lynch rearranged MJG and RD's seats in class to separate them and instructed classroom aides to more closely monitor RD and MJG.[136] No instance of inappropriate contact between RD and MJG occurred for an eleven month period after the first incident. In February 2016, MJG made her second allegation RD inappropriately touched her.[137] Finding an opportunity to escape supervision for a period of a few minutes to ten minutes alone is insufficient to find the District's conduct rose to the "conscience shocking level." The District lunchroom aides watched over RD, MJG and the other students.[138] While the District lunchroom aides' failure to follow MJG and RD to the outside patio area may have been negligent, MJG failed to adduce evidence the District "consciously disregarded" the risk RD inappropriately touch MJG.[139] MJG does not adduce evidence the District left MJG and RD unsupervised at any other time between the alleged incidents. MJG has failed to establish a state created danger. Because MJG has failed to establish a state created danger, MJG's municipal liability claim against the District also fails.

**g. We grant summary judgment dismissing the state law claims against the District, Mr. Roseman, Ms. Langston, and Ms. Lynch because they are immune under the Political Subdivision Tort Claims Act.**

The District, Ms. Langston, Ms. Lynch and Mr. Roseman[140] argue MJG's negligence, breach of fiduciary duty, and intentional infliction of emotional distress claims are barred because the District and its agents are immune under the Act. MJG and Parent argue the District and its agents are not immune because Mr. Roseman, Ms. Langston, and Ms. Lynch engaged in willful misconduct.

The Act provides no local agency, except in limited circumstances, "shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency of an employee thereof or any other person."[141] But local agencies lose governmental immunity if local agency's or its agent's negligent acts caused damages in limited circumstances.[142] An agency employee enjoys official immunity to the extent of its employing agency, except in an action "for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct."[143]

Willful misconduct "is synonymous with 'intentional tort.'"[144] "More specifically, willful misconduct occurs when the actor 'desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue.'"[145] Willful misconduct is a "demanding level of fault."[146]

The negligence and intentional infliction of emotional distress claim against the District must be dismissed because the District enjoys governmental immunity. MJG and Parent's negligence claim against the District does not fall within the eight listed categories excluded from governmental immunity in the Act.[147] For the same reason, MJG and Parent's intentional

infliction of emotional distress claim against the District fails.[148]

MJG and Parent failed to adduce evidence Mr. Roseman, Ms. Langston, or Ms. Lynch ("District Individuals") "desired to bring about the result" MJG would be sexually harassed "or was aware it was substantially certain to ensue." MJG argues the District Individuals acted in bad faith because they failed to separate RD and MJG during the 2015-2016 school year and "were ultimately unsupervised during lunch." MJG and Parent do not cite to the record to support their claim MJG and RD were not separated. The District also staffed two aides to observe students during the lunch period.[149] As discussed above, the District's conduct may have been negligent, but MJG failed to adduce evidence the District Individuals engaged in willful misconduct by failing to separate the students.

MJG argues the District Individuals failed to follow protocol and report the March 2015 incident to the police once Parent claimed MJG told her RD made MJG touch his penis. But the District Individuals acted in response to the allegation. Ms. Lynch separated the students and had classroom aides more closely monitor MJG and RD.[150] Even if the District Individuals failed to notify the police about the allegation, we fail to see how a reasonable juror could find this failure viewed in light of the District Individuals' response to the allegations would evidence the District Individuals' desire to have MJG subject to sexual contact or awareness RD's sexual contact on MJG was substantially certain to ensue.

MJG and Parent argue the District Individuals' concealed incidents of sexual contact from Parent. MJG and Parent cite to a December 2015 event in which MJG allegedly observed other students inappropriately touching each other in the library.[151] But MJG was not the recipient of this alleged sexual harassment; MJG simply claims she observed other students touching one another.[152] MJG and Parent also cite to a physiological report prepared in April

2015 which identifies MJG became increasingly interested in her body and sought sexual contact from others.[153]  But the psychologist prepared this report in part using information obtained from an interview with Parent and does not list any District Individuals as a source.[154]  The psychologist explains she requested educational records from Swenson but they did not arrive on time to be considered in the report. This report cannot support an argument the District Individuals concealed incidents of sexual contact from Parent.

MJG and Parent finally argue the District employees fraudulently ratified Ms. Oliver's timesheets and mislead the Commonwealth into believing MJG received more services than she actually received.  MJG and Parent attach comparisons of Swenson sign-in sheets versus Ms. Oliver's timesheets.  MJG and Parent cite to six examples in which Ms. Oliver's timesheets vary from Swenson's sign-in sheets resulting in a differential of 4.75 hours.[155]  This alone is insufficient to show the District fraudulently approved Ms. Oliver's timesheets.  MJG fails to adduce evidence how this slight variation is sufficient for a reasonable juror to find the District employees fraudulently approved Ms. Oliver's timesheets to intentionally mislead the Commonwealth into believing MJG received more therapeutic staff support services than Carson Valley actually provided.

MJG and Parent fail to adduce sufficient evidence for a reasonable juror to conclude the District Individuals engaged in willful misconduct.  Mr. Roseman, Ms. Langston, and Ms. Lynch enjoy official immunity from the state law claims under the Act.

### h.  We grant summary judgment on the breach of contract claim against the District as MJG and Parent are entitled to reasonable attorney fees.

MJG and Parent move for summary judgment on its breach of contract claim against the District for failing to pay reasonable attorney fees under the parties' settlement agreement.  The District argues the offered attorney hourly rates are unreasonable, MJG and Parent seek fees

unrelated to the due process complaint and settlement, the settlement contains an ambiguity, and MJG and Parent are not entitled to fees incurred after execution of the agreement.

"A party claiming breach of contract must establish: '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages.'"[156]

"[I]t remains for the district court to determine what fee is 'reasonable.'"[157]  "Courts initially assess reasonableness by using the lodestar formula which requires multiplying the number of hours reasonably spent by a reasonable hourly rate."[158]  "Courts look to the prevailing market rates in the relevant community to determine a reasonable hourly rate."[159]  MJG and Parent have the burden to prove its request for fees is reasonable.[160]  MJG and Parent must submit some evidence, apart from self-serving affidavits, supporting their proposed fees.[161]  "The fee schedule established by Community Legal Services ("CLS") has been approvingly cited by the Third Circuit as being well developed and has been found by the Eastern District of Pennsylvania to be a fair reflection of the prevailing market rates in Philadelphia."[162]  Generally, the reasonableness of an attorney's fees are assessed against facts existing at the time a fee petition is filed.[163]  "In determining whether the moving party has met its burden, [our court of appeals has] stressed that 'it is necessary that the [District] Court 'go line, by line' through the billing records supporting the fee request.'"[164]  Upon an objection from the non-moving party, we may reduce the amount of fees awarded.[165]

### i.    The District breached the Settlement Agreement.

MJG and Parent establish the existence of a contract and breach.  The Settlement Agreement provided, "The District will, within sixty (60) days of receiving detailed invoice and fully executed Settlement Agreement, pay reasonable attorney fees and costs to Joseph

Montgomery, Esquire, for time expended and costs on this matter to the date of this Agreement."[166]  The District agreed to this broad language with only a temporal limitation.  The District did not exclude work done on related matters for MJG and Parent, including those possibly raised in this Court.

Mr. Montgomery sent the District an invoice on September 27, 2016.[167]  The District has not paid any reasonable attorney fees and costs to Mr. Montgomery.[168]  Under the plain terms of the agreement, MJG and Parent are entitled to reasonable attorney fees and costs incurred up until the signing of the Settlement Agreement.

### ii.    Hourly Rates

The District argues the proposed hourly rates of $375 and $300 for Mr. Montgomery and Zachary Meinen, Esq. respectively is unreasonable.

Parent and MJG submit a declaration from Mr. Montgomery describing his and Mr. Meinen's experience and educational background.[169]  Mr. Montgomery has practiced law for nine years.[170]  Mr. Montgomery spent four years as an assistant district attorney, and four years clerking in Philadelphia's family court.[171]  While clerking, Mr. Montgomery founded his firm and began his education law practice.[172]  Mr. Meinen has practiced law for less than three years.[173]  Mr. Meinen joined Mr. Montgomery's firm in 2015 where his practice focuses on education law.[174]

Parent and MJG submitted a declaration from Michael Basch, Esquire from an entirely separate matter.[175]  Mr. Basch opines Mr. Montgomery's $375 hourly rate is within the range of fees charged by attorneys of comparable experience and credentials in our District based upon his personal knowledge of the prevailing rate.[176]  Mr. Basch also explains his own hourly rate far exceeds Mr. Montgomery's $375 hourly rate.[177]  Mr. Basch does not opine on Mr. Meinen's

hourly rates.

Parent and MJG also submitted a 2013 National Law Journal Billing Survey of average billing rates for several law firms in major legal markets throughout the United States.[178] Of the eight firms in Philadelphia included in the survey, the average partner billing rate is $575, while the average associate billing rate is $360.[179] The Philadelphia law firms included Ballard Spahr, Blank Rome, Cozen O'Connor, Duane Morris, Fox Rothschild, Morgan Lewis & Bockius, Pepper Hamilton, and Saul Ewing.[180]

We find MJG and Parent have failed to meet their burden to show the offered rates of $375 and $300 are reasonable. The only evidence MJG and Parent submit apart from Mr. Montgomery's self-serving affidavit is Mr. Basch's declaration and the NLJ survey. Mr. Basch prepared the declaration for another matter without considering the services Mr. Montgomery provided for MJG in this case and does not address Mr. Meinen's offered rates. The NLJ survey only accounted for firms in Philadelphia practicing "big law" and the survey did not specify rates in the context of seeking an award of attorney fees. The NLJ survey is also based upon data collected four years ago. Since MJG and Parent failed to meet their burden in proving their offered fees are reasonable, we have discretion in determining reasonable fees.[181]

The District submits the affidavits of Michael Levin, Esq. and Mile Shore, Esq.[182] Mr. Levin is an attorney licensed in Pennsylvania and has practiced law for over forty years.[183] Mr. Levin has been named a Pennsylvania Super Lawyer in the area of Schools & Education every year since 2005.[184] Mr. Levin's affidavit is based upon a review of, among others, Mr. Montgomery's fee declaration and the invoice Mr. Montgomery sent to the District.[185] Mr. Levin uses Community Legal Services' fee schedule to determine reasonable hourly rates of Mr. Montgomery and Mr. Meinen.[186] Mr. Levin concludes a reasonable hourly rate for Mr.

Montgomery and Mr. Meinen is $250 and $180 respectively.[187]  Mr. Levin calculated the number of years Mr. Montgomery and Mr. Meinen practiced from their license date to the start of this case.[188]  Mr. Levin also discounted Mr. Montgomery's experience in the district attorney's office as unrelated to education law and placed Mr. Montgomery into CLS's rate range for attorneys with two to five years of experience.[189]

Mr. Shore is the Interim General Counsel for the District.[190]  Mr. Shore disclosed the hourly rates of the District's counsel in this matter which is $220 for Jeffery Scott and $170 for Alison Morrissey.

We follow our court of appeals direction by considering the CLS attorney fee schedule to determine the prevailing market rate of Philadelphia attorneys.[191]  This schedule is used by CLS in cases where the law provides an award for attorney's fees.[192]  CLS created the schedule based upon Philadelphia law firm market survey data and the Consumer Price Index.[193]  CLS most recently updated the fee schedule in February 2017.[194]  The CLS fee schedule provides a Philadelphia attorney practicing between six to ten years has an hourly rate between $270 and $340.[195]  CLS provides a Philadelphia attorney practicing between two to five years has an hourly rate of $220 to $255.[196]  Mr. Montgomery has practiced law for nine years.[197]  Because Mr. Montgomery is on the tail end of CLS's range but has only focused his practice in education law since 2012 as the managing partner of his law firm, we find an hourly rate of $320 is reasonable for Mr. Montgomery's services.  Mr. Meinen has practiced law for less than three years.[198]  Because Mr. Meinen has practiced for a relatively short period of time and MJG and Parent failed to adduce evidence supporting his $300 rate, we find a $230 hourly rate is reasonable for Mr. Meinen's services.  Considerations apart from CLS's fee schedule and Mr. Montgomery's and Mr. Meinen's experience and skill support our finding.  Mr. Montgomery and

Mr. Meinen obtained a beneficial resolution for their client, and the subject matter and issues involved were complex and abundant.

### iii.    Time billed

The District argues MJG and Parent seek attorney fees outside the scope allowed by the Settlement Agreement.  The District challenges fees they claim are unrelated to MJG's due process complaint and time billed after execution of the Settlement Agreement.  MJG and Parent argue all time submitted is related to the due process complaint, and they may seek fees beyond execution of the Settlement Agreement because our enforcement of the Settlement Agreement would transform the agreement into a judicially sanctioned settlement under IDEA.

The District agreed to pay reasonable attorney fees and costs to Joseph Montgomery, Esquire, for time expended and costs on this matter to the date of the Agreement. The District signed the Agreement on October 13, 2016.  The District negotiated this Settlement Agreement without defining the "matter" to which fees are limited.  With ambiguity, we look to the parties' conduct.  The parties largely addressed the same fact issues in the due process hearing and in the federal questions.  The matter involves supervising the students.   This same conduct gives rise to potential claims in a variety of forums and absent some agreement limiting its scope, we find the "matter" to encompass the time billed by Attorney Montgomery and his colleagues.

To assess the reasonableness of time billed, we conducted a line by line review of Mr. Montgomery's invoice.[199]   The services billed up to October 13, 2016 are reasonable and necessary.   Lawyers are required, under professional obligations, to review all claims.  The District did not negotiate this obligation out of the fee agreement.   As such, the District is obligated to pay MJG's and Parent's attorneys fees, at the reasonable hourly rates set earlier: Joseph Montgomery at 44.6 hours; Zachary Meinen at 16.27 hours; Mary Montgomery at 2.4

hours and John O'Brien at 10.58 hours. With the reasonable hourly rates, the District must pay $19,636.60 to MJG and Parent. Under the Settlement Agreement, this invoice must be paid within sixty days.

> **i. We decline to exercise supplemental jurisdiction over MJG and Parent's negligence claim against Carson Valley and dismiss the claim without prejudice.**

Only MJG and Parent's negligence claim survives summary judgment. Under our supplemental jurisdiction[200], we "may decline to exercise supplemental jurisdiction over a claim . . . [if] (3) the district court has dismissed all claims over which it has original jurisdiction."[201] "This decision is left to 'the sound discretion of the district court,' which should focus on whether the dismissal of the pendent claims best serves the principles of judicial economy, convenience, fairness, and comity."[202] Where all federal claims are dismissed on summary judgment, "the court should ordinarily refrain from exercising [supplemental] jurisdiction in the absence of extraordinary circumstances."[203] The fact parties engaged in extensive discovery and spent significant time litigating in federal court is not a sufficient reason to retain jurisdiction when the discovery obtained may be used in a state court proceeding.[204] MJG and Parent "risked dismissal of [their] state law claims when [they] filed [their] lawsuit in federal court and invoked our discretionary supplemental jurisdiction power."[205]

We decline to exercise our supplemental jurisdiction over MJG and Parent's negligence claim. Judicial economy and convenience favor dismissal. Although the parties have litigated and engaged in discovery over the past ten months, MJG and Parent may use their discovery in a state court proceeding.[206] Further, MJG and Parent will not suffer prejudice in refiling their negligence claim in state court. MJG and Parent's negligence claim allegedly arising in February 2016 appears to not be barred by the statute of limitations.[207] Dismissal of the

negligence claim is not unfair as MJG and Parent faced the risk of dismissal when we invoked our discretionary pendent jurisdiction over their state law claims.[208] Comity favors dismissal because it will give a Pennsylvania court an opportunity to interpret its own law.[209] We do not find an extraordinary reason to maintain our jurisdiction over this state law claim.

### III. Conclusion

In the accompanying Order, we grant the School District's Motion for summary judgment and the Plaintiffs' Cross-Motion for summary judgment. We grant Carson Valley's Motion in part allowing the Plaintiffs to proceed on their state court negligence claim. As we resolved all claims over which we arguably enjoyed subject matter jurisdiction, we decline to resolve the remaining purely state law negligence claim in our supplemental jurisdiction.

---

[1] Our Policies require a Statement of Undisputed Material Facts be filed in support of a Rule 56 motion, as well as an appendix of exhibits. All parties move for summary judgment. The District, Ms. Langston, Ms. Lynch, and Mr. Roseman filed a Statement of Undisputed Material Facts at ECF Doc. No. 55 ("District SUMF") and appendix at ECF Doc. No. 56. Carson Valley submitted a Statement of Undisputed Facts at ECF Doc. No. 52 ("Carson Valley SUMF") and appendix at ECF Doc. 53. MJG and Parent responded to the District SUMF and Carson Valley SUMF at ECF Doc. Nos. 66 and 67. MJG and Parent filed an appendix at ECF Doc. No. 64.

MJG and Parent also move for summary judgment against the District for breach of contract. MJG and Parent's filed a Statement of Undisputed Facts ("MJG SUMF") at ECF Doc. No. 59 and appendix at ECF Doc. No. 58. The District responded to the MJG SUMF at ECF Doc. No. 63 and filed an appendix at ECF Doc. No. 63-3. References to the appendices shall be referred to by ECF number.

[2] ECF Doc. No. 52, ¶ 1.

[3] *Id.*

[4] *Id.* ¶ 11.

[5] ECF Doc. No. 52, ¶ 4.

[6] *Id*. at ¶ 5.

[7] ECF Doc No. 55, ¶¶ 8, 14.

[8] ECF Doc No. 52, ¶ 6.

[9] *Id*. ¶ 4.

[10] *Id*. ¶ 8.

[11] *Id*. ¶ 8.

[12] *Id*. ¶ 9.

[13] *Id*. ¶¶ 24, 30.

[14] *Id*. ¶ 38.

[15] *Id*. ¶ 39.

[16] *Id*. ¶ 24.

[17] *Id*. ¶ 20.

[18] *Id*. ¶ 25.

[19] *Id*. ¶ 21.

[20] *Id*. ¶ 25.

[21] *Id*. ¶ 26.

[22] ECF Doc. No. 52, ¶¶ 54-55.

[23] *Id*. ¶ 53.  On March 11, 2016, the police informed Ms. Lynch of their intent to recommend to the District Attorney's office to drop the case.  *Id*. ¶ 60.

[24] *Id*. ¶ 56.

[25] *Id*. ¶ 57.

[26] ECF Doc No. 55, ¶ 29.

[27] *Id.* ¶ 30.

[28] *Id.* ¶ 31.

[29] ECF Doc. No. 52, at ¶ 58.

[30] *Id.* ¶ 59.

[31] *Id.* ¶¶ 61-62.

[32] *Id.* ¶¶ 17, 20.

[33] *Id.* ¶ 18.

[34] ECF Doc. No. 55, at ¶ 18.

[35] *Id.* ¶ 35.

[36] *Id.* ¶¶ 38-41.

[37] 20 U.S.C. § 1681(a).

[38] 42 U.S.C. § 12132.

[39] 42 U.S.C. § 1983.

[40] ECF Doc. Nos, 24, 26. In our Memorandum applying the more deferential standards in reviewing motions to dismiss, we thoroughly reviewed and summarized case law regarding, among others, state created danger, municipal liability, and state action particularly in the school setting. With respect to MJG and Parent's state created danger claim against the District, we found MJG and Parent *alleged* sufficient facts to show the District affirmatively acted by placing MJG and RD in the same classroom without supervision and analogized this alleged fact to the state placing a student in the hands of a harasser. ECF Doc. No. 26, p. 11-15. We did not address whether Ms. Lynch, Ms. Langston, or Mr. Roseman acted with the degree of culpability to shock the conscience for purposes of state created danger. Similarly, we did not address whether the District intentionally discriminated against MJG under Title II of the ADA and whether the District acted with deliberate indifference in response to student-on-student sexual harassment under Title IX.

    As to MJG's and Parent's state law claims against the District, Ms. Langston, Ms. Lynch, and Mr. Roseman, we found MJG plead a claim for intentional infliction of emotional distress by showing willful or intentional misconduct preventing us from then applying official immunity. *Id.* at 26-27. We also found MJG plead a claim against Carson Valley for intentional infliction of emotional distress and negligence. *Id.* at 27-29. We found MJG's allegation Carson Valley actively concealed sexual abuse occurring at Swenson supported a claim of outrageousness. *Id.*

at 28.  We found MJG plead a claim for negligence by alleging Carson Valley knew about MJG's elopement risks yet failed to provide services during the lunch period.

[41] Summary judgment is a much different standard than applied to a motion to dismiss. Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(a).  A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).  On a motion for summary judgment, "we view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Mancini v. Northampton Cnty.*, 836 F.3d 308, 313 (3d Cir. 2016) (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014)).  "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)).  If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their care for which they have the burden of proof."  *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party."  *Id.*

[42] 42 Pa.C.S. § 8541 *et seq.*

[43] *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995).

[44] *Id.* (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

[45] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *Lugar*, 457 U.S. at 937).

[46] *Groman*, 47 F.3d at 638 (citing *West*, 487 U.S. at 48).

[47] *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (quoting *Leshko*, 423 F.3d at 339).

[48] *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).

[49] *Kach*, 589 F.3d at 646 (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995)); *see also Benlian v. PECO Energy Corp.*, No. 15-2128, 2016 WL 3951664, at *5 (E.D. Pa. July 20, 2016).  In our Order-Memorandum on Carson Valley's Motion to dismiss MJG's Second Amended Complaint, we found MJG failed to state a claim under the first and third tests. ECF Doc. No. 42.  We found MJG plead a claim for concerted action subject to discovery.  *Id*.

[50] *Cahill ex rel. L.C. v. Live Nation*, 512 F. App'x 227, 230 (3d Cir. 2013) (citing *Cruz v. Donnelly*, 727 F.2d 79, 81-82 (3d Cir. 1984)).

[51] *Kach*, 589 F.3d at 646 (quoting *Groman*, 47 F.3d at 638) (brackets omitted); *Brentwood Acad.*, 531 U.S. at 295–96.

[52] ECF Doc. No. 52, ¶¶ 42-43, ECF Doc. No. 66, ¶ 5. The need to allocate hours arose whenever Community Behavioral Health approved less than full-time therapeutic staff support hours. ECF Doc. No. 52, ¶¶ 42-43.

[53] ECF Doc. No. 66, ¶ 22; ECF Doc. No. 53-3, p. 1.

[54] ECF Doc No. 64-6, p. 2; ECF Doc. No. 67, ¶ 29.

[55] ECF Doc. No. 53-2, p. 7-10, ECF Doc. No. 53-7, 39-50, ECF Doc. No. 53-8, p. 1-2.

[56] ECF Doc. No. 43-7, p. 39-40.

[57] ECF Doc. No. 53-8, p. 35-37.

[58] *Id*.

[59] ECF Doc. No. 64-8, p. 3-5, 7-8.

[60] *R.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005) (quoting *Phillips v. Cricket Lighters*, 841 A.2d 1000 (Pa. 2003)).

[61] *Id*. (citing *Emerich v. Phila. Ctr. For Human Dev., Inc.*, 720 A.2d 1032, 1034 (Pa. 1998)).

[62] *Campo v. St. Lukes Hosp.*, 755 A.2d 20, 24 (Pa. Super. Ct. 2000) (quoting *Brandjord v. Hopper*, 688 A.2d 721, 723 (Pa. Super. Ct. 1997)).

[63] Carson Valley cites *D.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364 (3d Cir. 2002) for the proposition it does not owe a duty of care to MJG. Carson Valley's reliance on *Middle Bucks* is misplaced. Our court of appeals in *Middle Bucks* faced the question of whether a state actor owed a duty to protect students against peer misconduct under Section 1983. *Middle Bucks* does not address whether a private entity similar to Carson Valley owes students a duty of care under state law.

[64] ECF Doc. No. 53, p. 22.

[65] *Id*.

[66] Carson Valley's exhibit for the Encounter Form is virtually illegible, ECF Doc. No. 53-7, p.2. MJG provided a more legible version of the same Encounter Form in its appendix. ECF Doc. No. 64-3, p. 7.

[67] ECF Doc. No. 64-3, p. 7.

[68] *Id.*

[69] ECF Doc. No. 64-6, p. 2.

[70] *Id.*

[71] ECF Doc. No. 52, ¶ 40.

[72] ECF Doc. No. 53-2, p. 4.

[73] ECF Doc. No. 53-2, p.4; ECF Doc No. 53-2, p.1-2.

[74] ECF Doc. No. 64-2, p. 8.

[75] ECF Doc. No. 69, p. 3.

[76] ECF Doc No. 64-2, p. 3.

[77] Because issues of fact preclude summary judgment, it is premature to dismiss MJG's demand for punitive damages under its negligence claim which may be resolved in state court.

[78] *Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010) (quoting *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005).

[79] *Id.*

[80] *Id.* (quoting *Field v. Phila. Elec. Co.*, 565 A.2d 1170, 1184 (Pa. Super. Ct. 1989)).

[81] ECF Doc. No. 65-3, p. 11.

[82] ECF Doc. No. 64-8, p. 11-12.

[83] ECF Doc No. 56-3, p. 7; ECF Doc. No. 64-8, p. 11.

[84] ECF Doc. No. 53-2, p.7-10.

[85] MJG did not argue in opposition to summary judgment dismissing the Title IX claim. ECF Doc. No. 68-3. Nevertheless, we analyze the District's argument based on the evidence in the record.

[86] 20 U.S.C. § 1681(a).

[87] 526 U.S. 629 (1999).

[88] *Id*. at 647.

[89] *Id*. at 648.

[90] *Id*. at 648-49.

[91] *Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d 332, 369 (W.D. Pa. 2008) (quoting *Davis*, 526 U.S. at 648).

[92] *Id.* at 365 (quoting *Davis*, 526 U.S. at 645).

[93] *Doe v. Bellefonte Area Sch. Dist.*, 106 F. App'x 798, 799 (3d Cir. 2004).

[94] *Id*. at 800.

[95] No. 02-3615, 2003 WL 21250556 (E.D. Pa. 2003).

[96] *Id*. at *1.

[97] *Id*.

[98] *Id*.

[99] *Id*.

[100] *Id*.

[101] *Id*. at *4.

[102] *Id*. at *1.

[103] *Id*.

[104] *Id*. at *4.

[105] *Id*.

[106] *Id*.

[107] *Id*.

[108] ECF Doc. No. 55, ¶ 17, ECF Doc No. 56-3, p. 17; ECF Doc. No. 53-1, p. 20.

[109] *See Ings-Ray*, 2003 WL 21250556 at *1-4 (explaining the plaintiff remained in same homeroom with assailant and the following school year shared classrooms with the assailant).

[110] ECF Doc. No. 55, ¶ 26.

[111] *Id.* ¶ 29.

[112] ECF Doc. No. 55, ¶ 30.

[113] *Id.* ¶ 31.

[114] Because we find MJG and Parent failed to adduce evidence of intentional discrimination, we do not reach the District's second argument.

[115] 42 U.S.C. § 12132.

[116] *A.G. v. Lower Merion Sch. Dist.*, 542 F. App'x 193, 198 (3d Cir. 2013).

[117] *Id.* (citing *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 261 (3d Cir. 2013)).

[118] *Id.* (quoting *S.H.*, 729 F.3d at 264).

[119] *Id.* (quoting *S.H.*, 729 F.3d at 263).

[120] *Id.*

[121] *Id.*

[122] *S.H.*, 729 F.3d at 263 (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009)); *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 270 (3d Cir. 2014) (citing *S.H.*, 729 F.3d at 263).

[123] *E.D. v. Colonial Sch. Dist.*, No. 09-4837, 2017 WL 1207919, at *16 (E.D. Pa. 2017) (quoting *T.F. v. Fox Chapel Area Sch. Dist.*, 589 F. App'x 594, 601 (3d Cir. 2014)).

[124] ECF Doc. No. 55, ¶ 18.

[125] *Id.*

[126] *See E.D.*, 2017 WL 1207919, at *16.

[127] *Morrow v. Balaski*, 719 F.3d 160, 170 (3d Cir. 2013) (emphasis in original).

[128] *Id.* (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1205 (3d Cir. 1996)) (emphasis in original).

[129] *Mann v. Palmerton Area Sch. Dist.*, 871 F.3d 165, 170 (3d Cir. 2017) (citing *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006)).

[130] *Id.* (quoting *Estate of Smith v. Marasco*, 430 F.3d 140, 153 (3d Cir. 2005)).

[131] *Id.*

[132] *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 246 (3d Cir. 2016) (quoting *Vargas v. City of Phila.*, 783 F.3d 962, 973-74 (3d Cir. 2015)).

[133] *Id.* (quoting *Phillips v. City of Alleghany*, 515 F.3d 224, 238 (3d Cir. 2008)).

[134] The deliberate indifference standard is applicable here because Ms. Langston and Ms. Lynch were not faced with a split-second decision in responding to the allegations RD inappropriately touched MJG. Rather, Ms. Langston and Ms. Lynch had time to deliberate, as evidenced by Ms. Lynch, MJG's family, and Ms. Smale meeting to discuss the allegations. ECF Doc. No. 55, ¶ 17; ECF Doc No. 64-8, p. 11.

[135] ECF Doc. No. 55, ¶ 17; ECF Doc No. 64-8, p. 11.

[136] ECF Doc. No. 55. ¶ 18.

[137] *Id.* ¶ 24.

[138] ECF Doc. No. 67, ¶ 51.

[139] *See Brooks v. City of Phila.*, 747 F. Supp. 2d 477, 486 (E.D. Pa. 2010).

[140] No party adduced evidence of Mr. Roseman's conduct in relation to this suit. After review of the proposed statements of undisputed facts and each party's appendix, the only information we have about Mr. Roseman is he acted as Special Education Director of the District. ECF Doc. No. 55, ¶ 7. MJG's and Parent's breach of fiduciary duty and intentional infliction of emotional distress claims against Mr. Roseman are insufficient for this reason alone.

[141] *Id.* at § 8541.

[142] *Id.* at § 8542. Section 8542 lists the following categories where a local agency or its agents may be liable for negligent acts: vehicle liability; care, custody or control of personal property; real property; trees, traffic controls and street lighting; utility service facilities; streets; sidewalks; care, custody or control of animals. *Id.*

[143] *Id.* at § 8550.

[144] *Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1023 (Pa. Cmmw. Ct. 2014) (quoting *R.H.S. v. Alleghany Cnty. Dep't of Human Servs.*, 936 A.2d 2329, 1230 (Pa. Cmmw. Ct. 2007)).

[145] *Id.*

[146] *Sullivan v. Warminster Twp.*, 765 F. Supp. 2d 687, 707 (M.D. Pa. 2011) (quoting *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006)).

[147] 42 Pa.C.S. § 8542(b).

[148] *See L.H. v. Pittston Area Sch. Dist.*, 130 F. Supp. 3d 918, 930 (M.D. Pa. 2015).

[149] ECF Doc. No. 67, ¶ 51.

[150] ECF Doc. No. 55, ¶ 30.

[151] ECF Doc. No. 56-3, p. 7.

[152] *Id.*

[153] ECF Doc. No. 64-2, p.3.

[154] *Id.*

[155] ECF Doc. No. 64-8, p. 13-18.

[156] *Ruthrauff, Inc. v. Ravin, Inc.*, 914 A.2d 880, 888 (Pa. Super. Ct. 2006).

[157] *Sadler v. Balboa Capital Corp.*, No. 9-411, 2014 WL 839466, at *2 (W.D. Pa. 2014) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

[158] *Id.*

[159] *Id.* (citing *Loughner v. Uni. Of Pitts.*, 260 F.3d 173, 180 (3d Cir. 2001)). Under Pennsylvania law, to determine a reasonable hourly rate, we may also consider: the work performed, the character of services rendered, the importance of the litigation, the professional standing of the attorney, and the final results of the litigation. *Isralsky v. Isralsky*, 824 A.2d 1178, 1192 (Pa. Super. Ct. 2003) (citing *Diament v. Diament*, 816 A.2d 36+, 281 (Pa. Super. Ct. 2003)).

[160] *Id.*

[161] *Loughner*, 260 F.3d at 180 (quoting *Washington v. Phila. Ct. of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996)) ("The prevailing party 'bears the burden of establishing by way of satisfactory evidence, 'in addition to [the] attorney's own affidavits,' . . . that the requested hourly rates meet this standard.'").

[162] *Nwogwugwu v. Spring Meadows at Lansdale, Inc.*, No. 16-2663, 2017 WL 2215264, at *3 n.3 (E.D. Pa. 2017) (citing *Moldonado v. Houston*, 256 F.3d 181, 187 (3d Cir. 2001)).

[163] *See Berkoben v. Aetna Life Ins. Co.*, No. 12-1677, 2014 WL 3565959, at *18 (W.D. Pa. 2014) (citing *Lanni v. New Jersey*, 259 F.3d 146, 149-50 (3d Cir. 2001)).

[164] *Sadler*, 2014 WL 839466, at *2 (quoting *Interfaith Cmty Org. v. Honeywell Intern, Inc.*, 473 F.3d 694, 173 (3d Cir. 2005)).

[165] *Id.*

[166] ECF Doc. No. 59, ¶ 5; ECF Doc. No. 63, ¶ 5.

[167] ECF Doc. No. 59, ¶ 6.

[168] *Id.*

[169] ECF Doc. No. 58, p. 2-7.

[170] *Id.* at 2.

[171] *Id.*

[172] *Id.* at 3.

[173] *Id.* at 5.

[174] *Id.* at 6.

[175] *Id.*

[176] *Id.*

[177] *Id.*

[178] ECF Doc. No. 72-1.

[179] ECF Doc No. 72-2.

[180] ECF Doc. No. 72-1.

[181] *Carey v. City of Wilkes-Barre*, 496 F. App'x 234, 237 (3d Cir. 2012) (citing *Loughner*, 260 F.3d at 180) ("If the plaintiff fails to meet her prima facie case [of showing the reasonable market rate], the district court has the discretion to determine what award is reasonable.").

[182] ECF Doc. No. 63-3, p. 19-47.

[183] *Id.* at 19.

[184] *Id*. at 31.

[185] *Id*. at 22.

[186] *Id*. at 26-28.

[187] *Id*. at 27-28.

[188] *Id*. at 25, 28.

[189] *Id*. at 27.

[190] *Id*. at 46-47.

[191] *See Nwogwugwu*, 2017 WL 2215264, at *3 n.3.

[192] Community Legal Services – Attorney Fees, https://clsphila.org/about-cls/attorney-fees (last visited Oct. 30, 2017).

[193] *Id*.

[194] *Id*.

[195] *Id*.

[196] *Id*.

[197] ECF Doc. No. 58, p. 2.

[198] *Id*. at 5.

[199] *See Sadler*, 2014 WL 839466, at *2 (quoting *Interfaith Cmty Org.*, 473 F.3d at173).

[200] 28 U.S.C. § 1367.

[201] *Id*. at § 1367(c)(3).

[202] *Chotiner v. Phila. Housing Auth.*, No. 02-9504, 2004 WL 2915296, at *11 (E.D. Pa. 2004) (quoting *Annulli v. Panikkar*, 200 F.3d 189, 202 (3d Cir. 1999)).

[203] *Angeloni v. Diocese of Scranton*, 135 F. App'x 510, 514-15 (3d Cir. 2005) (quoting *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 196 (3d Cir. 1976)).

[204] *Chotiner*, 2004 WL 2915296, at *11 (citing *Annulli*, 200 F.3d at 203).

[205] *Id.*

[206] *See id.*

[207] 42 Pa.C.S. § 5524(7); 28 U.S.C. § 1367(d).

[208] *See Chotiner*, 2004 WL 2915296, at *11.

[209] *See id.*